```
 1                    IN THE UNITED STATES DISTRICT COURT
 2                      FOR THE DISTRICT OF MARYLAND
                              GREENBELT DIVISION
 3   _____
                                          )
 4   UNITED STATES OF AMERICA,            )
                                          )
 5        Plaintiff,                      )
                                          )Docket Number
 6             vs.                        )8:22-cr-00456-PX-1
                                          )
 7   DARRYL DEWAYNE WALKER,               )
                                          )
 8        Defendant.                      )
     _____)
 9
                      TRANSCRIPT OF SENTENCING HEARING
10                  BEFORE THE HONORABLE PAULA XINIS
                   UNITED STATES DISTRICT COURT JUDGE
11            Wednesday, December 20, 2023, AT 10:07 A.M.

12   APPEARANCES:

13   On Behalf of the Plaintiff:
          JOSHUA ROSENTHAL, ESQUIRE
14        LEAH GROSSI, ESQUIRE
          U.S. Attorney's Office
15        6406 Ivy Lane, Suite 800
          Greenbelt, MD  20770
16        (301)344-4006
          joshua.rosenthal2@usdoj.gov
17
     On Behalf of the Defendant:
18        RICHARD A. FINCI, ESQUIRE
          Houlon, Berman, Finci & Levenstein, LLC
19        7850 Walker Drive, Suite 160
          Greenbelt, MD  20770
20        (301)459-5721
          rfinci@houlonberman.com
21
     Also Present:  Maria Schokman, Probation
22                  Terese Tessari, FBI Special Agent
                    Kyle Koch, FBI Special Agent
23
             ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***
24                          PAULA J. LEEPER
                   Federal Official Court Reporter
25        United States District Court, Greenbelt, Maryland
```

```
 1                    P R O C E E D I N G S

 2        (Court called to order.)

 3            DEPUTY CLERK:  All rise.  The United States District

 4   Court for the District of Maryland is now in session.  The

 5   Honorable Paula Xinis presiding.

 6            THE COURT:  Good morning, everyone.

 7            COUNSEL:  Good morning, Your Honor.

 8            THE COURT:  You all can have a seat.  Will the

 9   government call the case?

10            MR. ROSENTHAL:  Good morning, Your Honor.  This is

11   United States v. Darryl Dewayne Walker, Criminal Number

12   PX-22-0456.

13        I'm Assistant U.S. Attorney Josh Rosenthal.  I'm joined

14   today by Assistant U.S. Attorney Leah Grossi, as well as FBI

15   Special Agent Kyle Koch and FBI Special Agent Terese Tessari.

16            THE COURT:  Okay.

17            MR. ROSENTHAL:  We are here for a sentencing.

18            THE COURT:  Good morning.

19            MS. GROSSI:  Good morning.

20            MR. FINCI:  And good morning, Your Honor; Richard

21   Finci on behalf of Darryl Walker, present to my left.

22            THE COURT:  Okay.  Good morning to you all.

23        I understand the government wishes to go under seal, so

24   I've asked that we do the under-seal portion first.  And the

25   courtroom has been cleared, and we'll go on the closed record.
```

```
 1          (It is the policy of this court that every guilty plea and
 2   sentencing proceeding include a bench conference concerning
 3   whether the defendant is or is not cooperating.)
 4          THE COURT:  All right.  It looks like we're ready to
 5   begin.
 6      Mr. Walker?
 7          THE DEFENDANT:  Yes.
 8          THE COURT:  My understanding is today is your
 9   sentencing.  And my first question to you is, have you had
10   enough time to review the presentence report that was prepared
11   in this case with your counsel so we can go forward today?
12          THE DEFENDANT:  That's this?
13          MR. FINCI:  No, that's this.
14          THE DEFENDANT:  Yes.
15          THE COURT:  Okay.  Mr. Finci, have you reviewed the
16   standard and the mandatory conditions of supervision that are
17   in the presentence report with Mr. Walker?
18          MR. FINCI:  Yes, Your Honor.
19          THE COURT:  Okay.  Mr. Walker, do you understand if I
20   place you on supervision, that there are standard and mandatory
21   conditions of supervision that you will have to follow?
22          THE DEFENDANT:  Yes.
23          THE COURT:  Okay.  You've reviewed those with
24   Mr. Finci?
25          THE DEFENDANT:  Yes.
```

```
 1              THE COURT:  Any questions about them?

 2              THE DEFENDANT:  No, ma'am.

 3              THE COURT:  Okay.  Any objections to any of those

 4    conditions, Mr. Finci?

 5              THE DEFENDANT:  No, ma'am.

 6              MR. FINCI:  No, Your Honor.

 7              THE COURT:  Okay.  Any other -- I know that there are

 8    some guideline issues, and I plan to go through them with you

 9    one by one because this is an expedited report.  So my

10    understanding, after communicating with Ms. Schokman, is

11    there's only been one version of the report, it's gone to you

12    all.  You've preserved certain arguments in the plea agreement.

13        So before I adopt the presentence report, I'm just going

14    to go through those with you.  Okay?

15              THE DEFENDANT:  Yes, ma'am.

16              THE COURT:  All right.  Government, though, apart

17    from the guidelines, any other additions, corrections or

18    changes?

19              MR. ROSENTHAL:  No, Your Honor.

20              THE COURT:  Okay.  And same question for you,

21    Mr. Finci, it's just the guidelines?

22              MR. FINCI:  No, apart from guideline questions.

23              THE COURT:  Okay.  All right.  Then I'm going to go

24    to -- I'm on Page 8 of the presentence report, and this is ECF

25    38.
```

1      The first is Paragraph 28, the probation officer has

2 adjusted the guideline upward by two levels because the

3 property of a financial institution was taken.

4      My understanding from Ms. -- you, Mr. Finci, is that at

5 the time of the guilty plea, and it's reflected in the

6 statement of facts, there was just no knowledge of this --

7           MR. FINCI:  Yes, there was no knowledge.  And when I

8 went back through the discovery, just so the Court is clear,

9 there was no indication other than the fact that 7-Eleven was

10 the owner of the ATM.  It did say 7-Eleven was the owner, but

11 it didn't mention any other entity as being a victim or

12 anything of that nature.

13      I would also point out that I'm not really clear what a

14 subsidiary means, and whether that falls into the definition of

15 under the guidelines of a financial institution.  If a bank has

16 a subsidiary, an LLC that it's operating, would that fall into

17 the category of financial institution if it's some sort of

18 other company that -- so I don't really understand whether this

19 would be a financial institution in any event, because I just

20 don't have that information.

21           THE COURT:  And other than this presentence report,

22 has anyone provided any records or any other evidence to you,

23 Mr. Finci, regarding this question?

24           MR. FINCI:  I don't recall if you've provided --

25 frankly, Your Honor, I don't recall if the government provided

1  something after the PSR.

2           **MR. ROSENTHAL:**  No, we haven't.

3           **MR. FINCI:**  I have not seen it; no, Your Honor.

4           **THE COURT:**  And it's not in the stipulated set of

5  facts, obviously?

6           **MR. FINCI:**  No.

7           **THE COURT:**  Okay.  Government, what's your position

8  on this adjustment?

9           **MR. ROSENTHAL:**  Our position is that this is the

10 appropriate adjustment.  Our understanding, having spoken with

11 FCTI, is that they are, as the -- as the PSR states, a

12 subsidiary of the Seven Bank, which is a Japanese bank.

13          **THE COURT:**  Did you agree to something otherwise in

14 the plea agreement?

15          **MR. ROSENTHAL:**  No.

16          **THE COURT:**  Did not?  I thought -- I thought there

17 was a plea agreement where this adjustment was not

18 contemplated.  Did I get that wrong?

19          **MR. ROSENTHAL:**  No, that is correct.  But this was

20 not discussed.

21          **THE COURT:**  And don't you have language -- right.

22 But don't you have language in the plea agreement that says

23 other than these adjustments, there are no other adjustments?

24          **MR. ROSENTHAL:**  Correct.  And that's why in our memo

25 we explain we don't seek this adjustment, we are just simply

 1    stating that we believe that probation calculated it correctly,

 2    but we ourselves are not -- did not calculate the guidelines to

 3    reflect this adjustment, and we are not seeking it.

 4              **THE COURT:**  So I should not take what you just said

 5    as advocating for this adjustment?

 6              **MR. ROSENTHAL:**  Correct.

 7              **THE COURT:**  All right.  Okay.  Ms. Schokman, as

 8    always, you're very thorough and complete, and I appreciate

 9    that.

10         I think the way I'm going to handle it is this:  The

11    parties clearly did not contemplate this.  It's not in the

12    stipulated set of facts.  And I don't think it would be

13    appropriate to, given the parties' meeting of the minds,

14    adjusting Mr. Walker upward by two levels especially when

15    there's just no indication that he knew.

16         Now, technically, I don't think that is an escape hatch to

17    this adjustment.  So what I propose is that I leave the

18    presentence report unchanged, and I tell you all right now, I'm

19    varying downward at least two levels to account for that

20    fact-specific agreement that the parties had, which is

21    warranted in this case because of the total lack of knowledge

22    that a financial institution was involved.

23         Any disagreement doing it that way?

24              **MR. ROSENTHAL:**  Not from the government, Your Honor.

25              **MR. FINCI:**  No, Your Honor.

1     **THE COURT:**  Okay.  All right.  So that takes care of

2  28, it will remain unchanged in the presentence report.

3     29, Mr. Finci, are you -- are you continuing to challenge

4  the six levels and argue that the five levels --

5     **MR. FINCI:**  So if I could just, by way of brief

6  background, Your Honor, explain myself.

7     **THE COURT:**  Sure.

8     **MR. FINCI:**  As we negotiated the plea agreement in

9  this case, of course we did that before we were working on the

10  stipulation of facts as well, I wanted to, in my mind,

11  distinguish between brandishment and otherwise use a firearm,

12  given that my client was, I guess you could describe, most

13  clearly as a getaway driver in this case and not inside the

14  7-Eleven.  In particular, that just jumped out at me.

15     **THE COURT:**  Uh-huh.

16     **MR. FINCI:**  And as I did that, I mean, to be frank

17  with the Court, I was not fully aware of the definitional

18  section, which described --

19     **THE COURT:**  Brandishment versus --

20     **MR. FINCI:**  Brandishment and otherwise use.  And when

21  I went back, as we negotiated, we already had a plea agreement,

22  and then the stipulation of facts and the wording that could

23  not be modified in the statement of facts.

24     To be frank with the Court, after I did the further

25  research, I just don't -- I see what the Fourth Circuit says.

1    I don't find there to be a real clear line on the continuum to
2    my way of thinking between brandishment and otherwise using.  I
3    think this is really close to the line in this case, given that
4    the firearm never touched anybody nor was it -- it is described
5    as having been, you know, sort of waved and used to -- in a
6    sense to you go over there, and you go over there.
7            THE COURT:  Well, the videos -- the stills that I
8    saw --
9            MR. FINCI:  It's out.
10           THE COURT:  -- it's out, and it's pointed at --
11           MR. FINCI:  Right.
12           THE COURT:  Yeah, that's a tough argument.
13           MR. FINCI:  So frankly -- as -- I wrote it in the
14   original sentencing memorandum, had it in there, and before
15   filing, I removed it, to be frank.
16           THE COURT:  Okay.  All right.  Okay.  And I
17   appreciate that.  Because I expect that, again, these arguments
18   will come out in terms of the sufficient but not greater than
19   necessary sentence.
20           MR. FINCI:  Correct.
21           THE COURT:  But if I'm understanding it right, there
22   is no -- at this point, there is no objection to that specific
23   offense characteristic at 29.
24           MR. FINCI:  Yep.
25       And I will say, I apologize, Mr. Rosenthal, for not

1 letting him know that before I filed it.

2    **THE COURT:**  Okay.

3    **MR. FINCI:**  Because he addressed it -- we were,

4 like -- I was on that same day, and we filed, and he included

5 it in his --

6    **THE COURT:**  Right.

7    **MR. FINCI:**  I should have let him know that I was not

8 going to raise it, and I apologize.

9    **THE COURT:**  Okay.  Well, thank you, I appreciate

10 that.

11   And so we're at the -- let's see, the guidelines -- so

12 we're at an offense level 27, but with the understanding that

13 I'm, at a minimum, varying downward to a 25, which would mean,

14 just for purposes of consistency, so that you, Mr. Walker, sort

15 of are on the same page, as you all had agreed in the plea

16 agreement, Mr. Walker is a criminal history Category III; is

17 that correct?

18    **MR. FINCI:**  No, I don't think, Your Honor.  I think

19 he's II.

20    **THE COURT:**  Okay.  Let's make sure I'm on point with

21 that.

22    **MR. FINCI:**  I think he has a one 3-point prior

23 conviction that counts in this case.

24    **MR. ROSENTHAL:**  Paragraph 56 in the PSR.

25    **THE COURT:**  Great.  Thanks for that.  Okay.  Great.

1    Yep.

2         So the guideline, then, for -- with this variance would be

3    a 25 and a criminal history Category II, correct?

4              **MR. ROSENTHAL:**   In this case, there's also grouping

5    which would add a point.

6              **THE COURT:**  Ah.  Okay.  So it's 26.  Okay.

7         So that brings us to 70 to 87 months as to Count One and

8    Three.

9              **MR. ROSENTHAL:**  Yes, Your Honor.

10             **THE COURT:**  And then the 60-month consecutive as to

11   Count Two?

12             **MR. ROSENTHAL:**  Yes, Your Honor.

13             **THE COURT:**  All right.  I think we're all on the same

14   page, and I otherwise adopt the presentence report as

15   unchanged.  And thank you, again, Ms. Schokman, for a well done

16   report as always.

17        Okay.  All right.  Let me hear first from the government;

18   and then from you, Mr. Finci; and if there's anyone from

19   Mr. Walker's family who wishes to be heard; and then finally

20   from him.

21             **MR. ROSENTHAL:**   Thank you, Your Honor.

22        There are two -- I would like to begin with just the two

23   offenses that are at issue here.  The first is the robbery from

24   April, which was incredibly violent.  It involved someone --

25   one of the defendant's co-conspirators pulling a gun on an

1  employee who was outside the 7-Eleven and forcing him inside at

2  gunpoint to lie down while -- while Walker and his

3  co-conspirators did their business.

4      Another co-conspirator brandished a knife at this

5  employee; and a third comes into the 7-Eleven and -- with a

6  heavy-duty saw, cracks open an ATM.  There's so much smoke,

7  that you'll see in some of the stills that we provided in our

8  sentencing memo, that the -- the recordings are cloudy because

9  there's literal smoke that fills the 7-Eleven while they crack

10 open the ATM and steal approximately $35,000.

11     The defendant and another co-conspirator are outside.  We

12 believe the defendant is the getaway driver.  He -- he drove

13 the crew to and from the 7-Eleven, so the crime could not be

14 complete without his involvement.

15     But this is not the first crime that they tried that

16 evening.  They actually attempt an armed carjacking earlier,

17 which we provided as a video exhibit, where you saw them get

18 out of their vehicle, they drew -- the same co-conspirator who

19 drew a gun on the store employee at the 7-Eleven, this is the

20 same person we believe who drew a gun on the parked white car

21 at the gas station and, following that, attempted an armed

22 carjacking.

23     They tried to crack open three other ATMs before they are

24 successful with this 7-Eleven.

25         **THE COURT:**  Can I ask a real technical question?

 1              MR. ROSENTHAL:   Sure.

 2              THE COURT:   Because you referenced this in your

 3    memorandum, that Mr. Walker was involved with the defendants in

 4    a case before Judge Chuang, correct?  There's -- that the

 5    April --

 6              MR. ROSENTHAL:   Yes.

 7              THE COURT:   -- 26th -- is it 26?

 8              MR. ROSENTHAL:   April 29th is the --

 9              THE COURT:   29 is the robbery --

10              MR. ROSENTHAL:   Yes.

11              THE COURT:   Is the subject of a separate indictment;

12    am I right?

13              MR. ROSENTHAL:   Correct.

14              THE COURT:   Okay.  Can you all -- usually they come

15    in as related.  I don't know what happened here.  But when it

16    comes to restitution, I'm going to ask the government -- I'm

17    going to make it joint and several, right?

18              MR. ROSENTHAL:   Sure, yes.

19              THE COURT:   With the codefendants in Judge Chuang's

20    case.  And I'm going to ask the government to be extra special

21    diligent when that case, if it resolves in convictions, to make

22    sure that the same is done for Mr. Walker so that the

23    restitution is joint and several going in both directions, if

24    that makes sense.

25              MR. ROSENTHAL:   Of course, yes.

1          **THE COURT:**  Okay.  All right.  Thanks.

2          **MR. ROSENTHAL:**  And the other offense at issue here

3    is not just the April armed robbery at a 7-Eleven, but the

4    September apartment search where law enforcement finds several

5    guns, including two semi-automatic rifles, over 400 rounds of

6    ammunition, and thousands of pharmaceutical-grade pills.  This

7    happens after they attempted to serve Mr. Walker with an arrest

8    warrant in connection with the April 7-Eleven armed robbery,

9    and he gets in his car and literally drives away at a high rate

10   of speed, that we notice quite close to Suitland High School.

11        And I think it's not simply just that these are two

12   extremely serious crimes on their own, but the defendant also

13   has a criminal history where he's been repeatedly convicted in

14   the state system.  Notably, in 2014, he was convicted of first

15   degree assault for essentially shooting at someone who had a

16   personal relationship with a former girlfriend of his -- with a

17   current girlfriend of his that caused this victim and the

18   person they were with to crash their car.

19        The defendant was sentenced to 15 years, all but three

20   years suspended.  So he's certainly aware of the -- of the

21   danger that --

22        **THE COURT:**  Probation in that case or supervision in

23   that case ended, like, I don't know, five weeks before this

24   case?

25        **MR. ROSENTHAL:**  Right.

Paula  J. Leeper - Federal Official Reporter

1          **THE COURT:**  It was a very short period of time.

2          **MR. ROSENTHAL:**  Yes; yes, Your Honor.  And so

3   certainly the defendant understands that you can't use guns.

4          And you can't -- you can't threaten people with guns.

5   That this is -- that this is serious business that the state

6   takes seriously and, nevertheless, he continues to commit

7   violent crimes.

8          And not just commit violent crimes or participate in

9   violent crimes, but amass a bunch of guns and ammunition for

10  himself.

11          The trajectory of his criminal history is also a bit

12  concerning.  He's been graduating from car theft to first

13  degree assault to now armed robbery of 7-Elevens, and

14  possessing thousands of pharmaceutical-grade pills that are

15  certainly not for his own use.  And -- and even though the

16  state has repeatedly intervened and tried to -- tried to adjust

17  the defendant's behavior.

18          As Your Honor pointed out, there are two other similarly

19  situated defendants.  We have charged two individuals in a

20  related case before Judge Chuang, Marquis Henderson and Zebedee

21  Johnson.  And in that case, we are currently in plea

22  negotiations with both of those defendants.  They are, as

23  charged, with a seven-year mandatory minimum.

24          In the case before Your Honor, the defendant is not

25  charged with a mandatory minimum in connection with the April

Paula  J. Leeper - Federal Official Reporter

16

```
 1    conduct.  He is charged with a five-year mandatory minimum in

 2    connection with the September conduct.

 3         So even though there is a related case, they are not --

 4    they are only related in part.

 5              THE COURT:  Right, in the one robbery -- or that --

 6    that course of conduct for that day, but then --

 7              MR. ROSENTHAL:  Yes.

 8              THE COURT:  -- they each have their own separate --

 9              MR. ROSENTHAL:  Yes, Your Honor, exactly.

10              THE COURT:  -- independent -- yeah, okay.

11         Would you make sure, Mr. Rosenthal -- again, I don't mean

12    to kind of perseverate on the restitution --

13              MR. ROSENTHAL:  Yes.

14              THE COURT:  -- but I'm going to announce the

15    restitution.  I'm going to use the defendants' names, you said

16    Zebedee Johnson and Marquis Henderson?

17              MR. ROSENTHAL:  Yes, Your Honor.

18              THE COURT:  Can you make sure that the proper

19    spelling for those and the case is given to Ms. Gomez so that

20    the J and C is correct?

21              MR. ROSENTHAL:  Yes, Your Honor.

22              THE COURT:  Okay.  All right.

23              MR. ROSENTHAL:  And for -- for all those reasons, we

24    ask -- we ask the Court to sentence the defendant to the

25    high -- to the high side of the guidelines as calculated,
```

1  without the two-level enhancement, that it would be 147 months

2  followed by five years of supervised release, as well as a

3  forfeiture order which would be corrected, as Your Honor had

4  described, of $35,000 -- 35,020 --

5            THE COURT:  Is that the forfeiture or the

6  restitution?

7            MR. ROSENTHAL:  I apologize.

8            THE COURT:  That's restitution, right?

9            MR. ROSENTHAL:  Right.

10           THE COURT:  Is there a forfeit -- there is a --

11           MR. ROSENTHAL:  And there is a pending order of

12  forfeiture, yes, preliminary order of forfeiture.

13           THE COURT:  And there was no disagreement, right,

14  Mr. Finci, on that?

15           MR. FINCI:  Let me -- may I have the Court's

16  indulgence for one moment?

17           THE COURT:  Sure.

18      And this preliminary order of forfeiture relates to the

19  firearms and the ammunition?

20           MR. FINCI:  Right.  That's what I was doublechecking.

21           THE COURT:  Yeah, that's at least what's --

22           MR. FINCI:  Right.

23           THE COURT:  -- listed one through five on Page 2.

24           MR. FINCI:  No objection to that, Your Honor.

25           THE COURT:  Okay.  All right.  So I'm going to go

1   ahead and sign that order.

2       Okay.

3           **MR. ROSENTHAL:**  Nothing further, Your Honor.

4           **THE COURT:**  Okay.  Thank you.

5       All right.  Mr. Finci?

6           **MR. FINCI:**  Thank you, Your Honor.

7       Before I talk a little bit about Darryl, I just wanted to

8   emphasize what is in part in the sentencing memorandum about

9   how we got here.  And we got here prior to the indictment of my

10  client for the robberies because my client, from the beginning,

11  has been accepting responsibility for his actions.

12      As I indicated in the sentencing memorandum, the robbery

13  case started in state court, and while we were in state court,

14  of course, the drug and gun case had come up.  And in an effort

15  to obtain a global resolution, my client instructed me to begin

16  working with the government for this global resolution.

17      And so from the very beginning, he has wanted to accept

18  responsibility, has done that upfront in a responsible way.

19      You've heard --

20          **THE COURT:**  In some ways, though, it's very

21  advantageous, right?  And this is why I say that, right?

22  Because the robbery itself, if that were just in federal court,

23  you would be two levels lower than you are now.

24      And when I look at the underlying conduct from that search

25  warrant, there is a gun store and a pharmacy being run by

1  Mr. Walker.  I mean, those pills are thousands upon thousands

2  of oxy, hydrocodone, fentanyl, amphetamine.  I -- it's just, in

3  its breadth and depth, it's pretty remarkable.

4          **MR. FINCI:**  I'm not trying to belittle that in any

5  way, but the vast proportion were not the fentanyl, hydrocodone

6  or oxys.  They were, I believe, amphetamines or something of

7  that nature.  I have to doublecheck, Your Honor.

8          **THE COURT:**  Yeah, I'm not quite sure --

9          **MR. FINCI:**  But I think that's an important

10  distinction.

11          **THE COURT:**  I mean, I'm not really sure what to make

12  of that, though.  Does it just mean the inventory was low?

13      I mean, it still -- fentanyl and oxycodone, in any

14  quantities, are a recipe for disaster, and we know that.  And

15  next to, you know, as close to Suitland High School as they

16  are, which the government rightly raises, it really was quite

17  advantageous, I think, to reach the resolution you did.

18          **MR. FINCI:**  Yes, but it also assists the government

19  in ways that I think are clear in that when the others -- the

20  others have been recently indicted, and as we heard, are in

21  negotiations already to resolve the case.  So I would submit to

22  the Court that all in all, overall, there's positive on both

23  sides.

24      There's benefit to my client in negotiating an agreement

25  of this nature with the grouping rules that sometimes inure to

1  the benefit -- in certain cases to his benefit, and to the

2  government in pursuing resolution of related cases, I think

3  clearly my client's early plea has led to that sort of effort

4  as well.

5      I should tell the Court -- I mean, to be frank with the

6  Court, I don't know exactly when the U.S. Attorney's Office

7  started looking at the 7-Eleven case, but I can tell you in

8  state court, it was dragging.  I can tell you that in state

9  court, it didn't seem to me like it was going to quickly get

10 resolved in a way where the government could -- where the

11 State's Attorney's Office could put the case together, frankly.

12     So it -- that led to me trying to group this together and

13 them agreeing, because, frankly, we were the ones pushing.  And

14 it didn't appear that anybody else was pushing.

15     So I think it's important to note that that's the way we

16 reach this resolution quickly and relatively quickly as it

17 relates to my client.

18         **THE COURT:**  At the time, who was Mr. Walker living

19 with when this search warrant was executed?  Was he by himself?

20         **MR. FINCI:**  No, Your Honor, I think he was living

21 with -- what's Brianna's last name?

22         **THE DEFENDANT:**  Rollins.

23         **MR. FINCI:**  Rollins; Brianna Rollins, your Honor.

24         **THE COURT:**  Any children in that house?

25         **MR. FINCI:**  Is there one daughter?

```
 1            THE DEFENDANT:  My daughter don't live there.

 2            MR. FINCI:  No; no, Your Honor.

 3            THE COURT:  Okay.

 4            MR. ROSENTHAL:  Yes, there was, Your Honor.

 5            MR. FINCI:  Excuse me.  Beg the Court's indulgence.

 6     Who was in the house?

 7            THE DEFENDANT:  There wasn't no kids in the house.

 8  The kids wasn't there.

 9            MR. FINCI:  As far as I know, no children in the

10  house, Your Honor, but --

11            THE COURT:  The government is saying otherwise.  I

12  don't know if there were children maybe present during the

13  execution of the warrant.  Not sure, but seems to be a

14  disagreement on that.

15            MR. ROSENTHAL:  I -- I apologize, Your Honor.

16            THE COURT:  Okay.

17            THE DEFENDANT:  Got two kids, but they wasn't there.

18            MR. FINCI:  They weren't there?

19            THE DEFENDANT:  Yeah.

20            MR. FINCI:  But they both lived there?

21            THE DEFENDANT:  Yeah.

22            MR. FINCI:  Oh, okay.

23     Your Honor, so they weren't -- let me be clear.

24            THE COURT:  Mm-hm.

25            MR. FINCI:  My client has informed me, they weren't
```

```
1   there when the search warrants were executed.  They lived

2   there, but they'd spend time elsewhere as well.

3            THE COURT:  And how many children?

4            MR. FINCI:  There are just two children.

5            THE DEFENDANT:  Two.

6            THE COURT:  Ages?

7            MR. FINCI:  What are their ages?

8            THE DEFENDANT:  Ten and --

9            MR. FINCI:  You can say.

10           THE DEFENDANT:  Ten and eight.

11           THE COURT:  Ten and eight.

12      Are they with us today?  There's a young -- young man with

13   us today.

14           MR. FINCI:  Is that one of them?

15           THE DEFENDANT:  Yeah.

16           MR. FINCI:  Which one, the eight-year-old?

17           THE DEFENDANT:  Yeah.

18           MR. FINCI:  That's the eight-year-old, Your Honor.

19           THE COURT:  That's --

20           MR. FINCI:  The eight-year-old.

21           THE COURT:  Okay.  Okay.

22           MR. FINCI:  So, Your Honor, you see in the

23   presence report and in my sentencing memorandum that Darryl

24   is 37 years old; that he grew up in Jacksonville, Florida, to a

25   single teenage mother.
```

 1      He moved to D.C. to be raised by his grandmother here in

 2 D.C.  Eventually, his mother also came.  They were separated

 3 for a year or two.  They lived in a neighborhood in D.C. that

 4 was described as low income and plagued by violence.

 5      He is fortunate to have a number of siblings that live in

 6 the area with whom he is close.  I believe his sister is

 7 present, Your Honor, in the courtroom here today in support of

 8 Darryl.  He worked in auto repairs and towing.

 9      Your Honor, as I indicated in my sentencing memorandum, as

10 Darryl and I talk about this case and about what is ahead of

11 him, not only does he, of course, deeply regret his conduct

12 that gets him here, and he'll tell you that, I think, when he

13 has a chance, what he really regrets is the poor

14 decision-making that is leading him to be separated from his

15 two daughters.

16      He's very proud of his daughter Autumn, who is not here

17 today.  She's a brilliant young lady graduating early from high

18 school this year, a year early.  She's not merely planning to

19 go to college, but she's being recruited to all sorts of

20 colleges.

21      There was plans -- Darryl had plans to attend college

22 visits with him -- with her over the past few months.  She's

23 been invited to attend Spelman College, which I think we all

24 know is a very well-respected, minority-based school.  She's

25 also heard from Ivy League schools.  So she has a wide

1  attraction.

2      She's told Darryl that she wants to be a physician.  To

3  me, that's a wonderful dream.  And I think it means something

4  that Darryl and Autumn's mother are raising a child that is

5  that smart, and that is -- has that much of a future.  And

6  Darryl very much regrets that he's not going to be around for

7  the next number of years to be with her as she progresses

8  through college.

9      He similarly regrets that he's going to miss London's, his

10  youngest daughter's, years.  She's four.

11      Darryl described her to me as confident, also highly

12  intelligent, very verbal in an adorable, and I use the word

13  "sassy" kind of way, that's the way Darryl described her.

14  Loves her.  He regularly drove her to school.  He had breakfast

15  with her nearly every day, or many days.  And, you know, he

16  hopes to be finished with his sentence in time to participate

17  with her as she seeks out her, you know, life in college and so

18  forth.

19      Your Honor, as I started, I think the most important

20  factors in this case to consider in favor of my client is his

21  prompt acceptance of responsibility.  They are serious cases.

22  I'm not going to sugarcoat them, Your Honor.

23      You know, I think -- I think our credibility in accepting

24  responsibility for these very serious charges, you know, is

25  reflected in the way that we look at the guidelines and the

1  brandishment versus the use.  They're serious cases.  That's

2  the bottom line; and we agree, Your Honor.

3     What we're asking the Court to consider is a sentence of

4  120 months, which is a very, very major sentence that we

5  suggest adequately serves the purposes and factors of

6  sentencing that 3553(a) requires the Court to consider.  It

7  provides deterrence to both my client and to -- in general, to

8  those out in the community who might participate in crimes like

9  this in the future.  It's a substantial sentence.

10    And, Your Honor, we would ask the Court to consider that

11 sentence in this case.

12        **THE COURT:**  Okay.  Thank you, Mr. Finci.

13    Can I ask, again, a question about restitution?  I

14 understand this was an expedited presentence report.  There is

15 some indication that -- Mr. Walker, you've done well in your

16 day job that you're -- hopefully, you'll come back to it when

17 you are home, because you clearly have skills in that regard.

18 And it appears as if there's some vehicles that are titled in

19 other peoples' names.  And I'm not really clear on assets.

20    And while I don't want to belabor it, what I would want to

21 see happen is that there is a fully executed financial

22 affidavit when Mr. Walker comes home so that we know what the

23 assets are.  I'm going to provisionally set a monthly

24 restitution payment.

25    But if probation could make a note that when Mr. Walker is

1    home, and he's on his feet, I really do want to know what asset

2    profile there is, because if I can increase the monthly amount,

3    I certainly will.  We'll see what's left of -- of the total.

4         So I guess this is not something, Mr. Finci, you need to

5    untangle right now, because I do recognize that whether I go

6    with your recommended sentence, the government's, or somewhere

7    else, it's going to be a lengthy term, and whatever assets may

8    not be available.

9         So it's just a -- just a heads-up that I'm going to want a

10   financial affidavit when Mr. Walker comes home, okay?  All

11   right.

12             **MR. FINCI:**  Yes, Your Honor.

13             **THE COURT:**  Mr. Finci, does anyone from the family

14   wish to be heard before we turn to your client?

15             **MR. FINCI:**  No, Your Honor.  They showed up today to

16   show their support, more than anything, and they don't wish to

17   say anything.

18             **THE COURT:**  All right.  And I do recognize there are

19   a number of family in the -- in the courtroom, and I appreciate

20   you all coming and showing your support.

21        Mr. Walker, before I impose sentence, this is your

22   opportunity to tell me or anybody else here anything you want

23   us to know.  You don't have to speak.  You have the absolute

24   right to remain silent.  And I will not hold your silence

25   against you.

1    You also don't have to stand, so whatever is more

2  comfortable for you.  If it's more comfortable to sit because

3  the microphone is closer, feel free to do that.  But if there

4  is anything you wish for us to know, now would be the time.

5         **THE DEFENDANT:**  I just want to apologize to my family

6  and kids.  That's all.

7         **THE COURT:**  Okay.  All right.  Do you want -- is

8  there anything else?  Because you can have a seat, if not.

9  Okay.

10   All right.  So Mr. Walker, as I know Mr. Finci has

11  explained to you, he's a very good lawyer, I have to consider

12  many, many, many factors under the sentencing statute.  I'm

13  going to start with you, your history and characteristics and

14  circumstances.

15   And while the government has rightly pointed out that you

16  have criminal history, I've certainly seen worse.

17   What's notable to me is that you were just off supervision

18  when this spree happened, and that night was a crime spree.

19  And that's really unfortunate.

20   But the other thing that's noteworthy to me is I'm sure

21  that life coming up was hard for you.  I'm not minimizing that,

22  but you do have a lot that is in your favor that a lot of

23  people I see don't.  You -- you're healthy.  You graduated from

24  high school.  You've run your own business.  You've helped your

25  grandfather run his own business.  You -- you don't seem to

1   have any significant physical or mental or drug abuse issues,

2   and that is all in your favor.

3      And the hard work that you put into things is in your

4   credit.  And but for that, I would be giving you every single

5   day that the government is asking for.

6      But I am taking into account all of those things which

7   suggest to me, after a lengthy prison term, you have the tools,

8   if you want it, to go a different direction.  And if those

9   children in this courtroom look to you, I really hope that you

10   take those skills and go on a different direction, because

11   frankly, those are the kids that need you the most.

12      They look -- they -- you're their role model, so that is

13   one factor that I have to consider, but it's not the only one.

14      I don't have to pound over your head how serious this

15   offense is.  Which one, right?  There's first the crime spree,

16   where, yes, you were the getaway driver, so that is -- again,

17   in my view, it is somewhat mitigating.

18      You weren't in there actually terrorizing the poor guy who

19   was working there, because I'm sure that night is going to live

20   with him forever.  It doesn't sound like you were the one who

21   pointed the gun at the person in the white car.

22      Again, just thinking about all those young people who are

23   out at night, and not -- you know, just out, and the next thing

24   you know, you got a gun to your face.

25      But you were part of that.  You made it happen.  You

1  drove.  You knew what was going on -- there's no indication you

2  didn't know what was about to happen.  So there's that.

3      And then there are those extremely dangerous firearms and

4  extremely dangerous pills that were of a quantity that the only

5  inference, the only thing I can draw from it is you were

6  selling.

7      So it is among the most serious that I've seen in quite

8  some time, and I have to impose a sentence that protects the

9  public; deters you and others who are thinking about committing

10 crimes like this in the future; and promotes respect for the

11 law, that the law means something.  That it's not 15 years, all

12 but three suspended, when two people were shot at.  That was a

13 gift, frankly, in that case, because of the danger involved.

14     So when I look at all those things, in my view, the

15 sufficient but not greater than necessary sentence is 132

16 months incarceration, slightly higher than what your attorney

17 has asked for, a little bit lower than what the government has

18 asked for, because of the way I assessed the facts.

19     You will get credit for the time that you have served both

20 in federal detention and in state custody, so the judgment will

21 read that any time you spent in official detention not

22 otherwise credited toward this case should be credited toward

23 this sentence so that you get the full credit.

24     Once you are home, you'll be on -- let me -- let me break

25 down the sentence.  So -- give me one second.

1      This is when I wish I did better in math.  Hold on.  I

2  want to announce it correctly.

3      Okay.  For Count One, it will be 72 months; for Count Two,

4  it will be 60 months consecutive to Count One; and for Count

5  Three, 72 months concurrent with Count One; for a total of 132

6  months.

7      You'll be placed on five years of supervised release, and

8  that is as to Count Two; and three years of supervised release

9  as to Counts One and Three to run concurrent with Count Two.

10     In addition to the standard and mandatory conditions of

11  supervision, there will be -- for each count, there's a $300 --

12  there's a $100 special assessment.  That adds up to $300.

13         **THE DEFENDANT:**  Okay.

14         **THE COURT:**  You -- I don't believe that's been paid

15  yet, so that will be a condition of your supervised release, to

16  pay your special assessment.

17     Any outstanding restitution that is owed will be paid at

18  $100 per month as a special condition of your supervision.

19  You'll submit to substance abuse testing to determine if you're

20  using any illegal substances.  If you're not, that condition

21  can be suspended; if you are, then we can always modify it to

22  give you treatment.  But at this juncture, it's just to be

23  tested.

24     And if you need it, I'm going to order the special

25  condition of participating in a vocational services program,

1    which can include finding a job, getting you ready to find a

2    job.  You may or may not need it, but I certainly want to make

3    sure that you have the special condition so that probation

4    helps you, if you -- if you -- to get on your feet.

5              **THE DEFENDANT:**  Okay.

6              **THE COURT:**  And be going in the right direction in

7    terms of an honest living.  Okay?

8              **THE DEFENDANT:**  Uh-huh.

9              **THE COURT:**  All right.  With regard to restitution,

10    the full amount is $35,020 payable to the victim, which you've

11    given -- can you -- can you put on the record the -- the

12    victim's official tile?

13              **MR. ROSENTHAL:**  Yes, Your Honor, it's FCTI,

14    Incorporated at 11766 Wilshire Boulevard, Suite 300, in Los

15    Angeles, California.

16              **THE COURT:**  Okay.  Thank you.

17        And that will be -- that restitution is joint and several

18    with Marquis Henderson and Zebedee Johnson; am I right about

19    that?

20              **MR. ROSENTHAL:**  Yes, Your Honor.

21              **THE COURT:**  And the case number is TDC-23 -- I had

22    it.

23              **MR. ROSENTHAL:**  Your Honor, it's Criminal Number

24    TDC-23-258.

25              **THE COURT:**  Okay.  And so what that means,

1    Mr. Walker, is if and when those cases are resolved by way of a

2    conviction, all three, or whoever is convicted, will be liable

3    to -- to fulfill that restitution amount.

4        You're all going to contribute; when it gets to $35,020,

5    then the restitution is satisfied.  Okay?

6            **THE DEFENDANT:**  Okay.

7            **THE COURT:**  Any questions about -- any part in -- and

8    there will be no fine.  I want your dollars to go to paying the

9    restitution and supporting yourself.

10       Any aspects of the sentence I have neglected to impose?

11           **MR. ROSENTHAL:**  Not from the government, Your Honor.

12           **MR. FINCI:**  No, Your Honor.

13           **THE COURT:**  Okay.  Mr. Finci, any recommendations for

14   designation or programming?

15           **MR. FINCI:**  Yes, Your Honor.  First, we'd ask

16   Cumberland be recommended.  He has family in Hagerstown, so

17   that one is relatively close.

18           **THE DEFENDANT:**  And the drug program.

19           **MR. FINCI:**  The job program?

20           **THE DEFENDANT:**  The drug.

21           **MR. FINCI:**  The drug program?

22       He -- Court's indulgence.

23           **THE COURT:**  Okay.

24           **MR. FINCI:**  That's it, Your Honor.  Thank you.

25           **THE COURT:**  Okay.  FCI Cumberland?

```
 1              MR. FINCI:  Yes, please.

 2              THE COURT:  All right.  Best of luck to you,

 3   Mr. Walker, and I thank you for all your time.

 4              MR. ROSENTHAL:  Your Honor, one thing.

 5              THE COURT:  Oh, counts to dismiss.

 6              MR. ROSENTHAL:  Yes.

 7              THE COURT:  So Counts One through Three of the

 8   original indictment?

 9              MR. ROSENTHAL:  Correct, Your Honor.

10              THE COURT:  Okay.  And I grant that motion.  I find

11   it reasonable pursuant to Rule 11(c)(1)(A), and I appreciate

12   that.  Okay.

13      Thank you, all.

14      Thank you.  Boy, I am really not on my game today.  One

15   more thing.

16      Mr. Walker, I don't remember whether in your plea

17   agreement you had given up the right to appeal, but if you're

18   dissatisfied with my sentence, please speak with Mr. Finci

19   about that immediately because you have to note your appeal

20   within 14 days.

21              THE DEFENDANT:  Okay.

22              THE COURT:  Okay?

23      Thank you, Ms. Gomez.  Is there anything else I forgot?

24              MR. ROSENTHAL:  No, Your Honor.

25              THE COURT:  Okay.  All right.  Thank you all.
```

1          **DEPUTY CLERK:**  All rise.  This Honorable Court now

2    stands adjourned.

3         (Court is adjourned at 10:48 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Paula J. Leeper, Federal Official Court Reporter, in

5   and for the United States District Court for the District of

6   Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

7   the foregoing is a true and correct transcript of the

8   stenographically-reported proceedings held in the

9   above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12
                              Dated this 9th day of January, 2024.
13

14

15                            /S/ Paula J. Leeper
                              _____
16
                              Paula J. Leeper
17                            Federal Official Reporter

18

19

20

21

22

23

24

25
```